**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ZYBRIONA WILLIAMS,<br>Plaintiff,<br>v.<br>OFFICER JESSICA MEGAN ANDREWS, *et al.*,<br>Defendants. | Civil Action No.<br>1:26-cv-00304-SDG |

**OPINION AND ORDER**

This case is before the Court on the motion to dismiss filed by Defendants Jessica Megan Andrews and the Metropolitan Atlanta Rapid Transit Authority (MARTA) [ECF 11]. Having reviewed Plaintiff Zybriona Williams's complaint and Andrews's body camera footage, the Court concludes as follows: Williams plausibly alleges that Andrews arrested her without arguable probable cause in violation of the Fourth Amendment; Andrews is entitled to qualified immunity as to Williams's Fourth Amendment excessive force claim; and Williams has abandoned her state law claims and her claims against MARTA. Accordingly, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Williams may proceed with her Fourth Amendment false arrest claim against Andrews, but her remaining claims are dismissed.

## I. BACKGROUND

Williams brings this civil rights case pursuant to 42 U.S.C. § 1983 and state law after she was tased and arrested at a MARTA station in Atlanta. On the evening of March 24, 2025, Williams and her partner, Andrew Simmons, entered a MARTA station on West Peachtree Street, where Andrews was patrolling.[1] Williams and Simmons went through the fare gates, and Andrews began to suspect that one of them failed to pay the fare.[2] After confronting the couple, Andrews determined to arrest Williams.[3] In doing so, Andrews deployed her taser, and in the scuffle Williams fell and hit her head.[4] Williams was charged with obstruction.[5]

Williams initially filed this lawsuit in January 2026.[6] Her amended complaint brings three counts: (1) violation of her Fourth Amendment rights, under a false arrest theory as well as an excessive force theory, pursuant to § 1983; (2) a state law assault and battery claim; and (3) a state law false arrest claim.[7]

---

1 ECF 8, ¶ 3.

2 *Id.*

3 *Id.* ¶ 5.

4 *Id.* ¶ 7.

5 *Id.* ¶ 8.

6 ECF 1.

7 ECF 8.

Andrews and MARTA are named as Defendants; while all counts appear to implicate Andrews, it is unclear which apply to MARTA.

Andrews and MARTA move to dismiss, requesting that the Court consider Andrews's body camera footage from the incident.[8] They argue Williams fails to plausibly allege any of her claims, and Andrews also asserts qualified immunity as to Williams's federal law claims and official immunity as to her state law claims. Williams opposes the motion, attaching affidavits executed by her and Simmons.[9]

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to

---

8 ECF 11. Andrews and MARTA also filed a motion to stay these proceedings while their motion to dismiss was pending. ECF 13. However, the Court's Standing Order clearly states that "[d]uring the pendency of a motion to dismiss . . . by any party . . . all litigation activity is automatically stayed until [the Court] rule[s] on the motion or otherwise direct[s], unless all parties agree in writing otherwise." ECF 10, § II.e. Accordingly, the motion to stay is denied as moot.

9 ECF 15. The affidavits appear to be an attempt to bolster the allegations of the complaint in response to Andrews's body camera footage. However, the Eleventh Circuit has held that a claim raised for the first time in response to a motion to dismiss, rather than in a properly amended complaint, is not properly raised, and therefore the Court will only consider the allegations in the complaint. *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). That said, the factual averments in the affidavits can also be reasonably inferred from the complaint and the body camera footage, and so the Court may consider them in that sense.

relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A complaint is plausible on its face when the plaintiff pleads facts sufficient for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The principle that the Court must accept all well-pleaded facts as true at this stage does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

As a preliminary matter, the Court concludes it may properly consider Andrews's body camera footage in ruling on the motion to dismiss without converting the motion into one for summary judgment. With the benefit of the footage—but still construing the ambiguities and drawing all reasonable inferences in Williams's favor—the Court concludes that Williams states a plausible § 1983 false arrest claim, and Andrews is not presently entitled to qualified immunity; however, Andrews is entitled to qualified immunity as to Williams's § 1983 excessive force claim. Because Andrews did not respond to Defendants' arguments for dismissal of her state law claims and her claims against MARTA, those claims are deemed abandoned and dismissed.

### A. Andrews's Body Camera Footage

Pursuant to Fed. R. Civ. P. 12(d), when the Court rules on a Rule 12(b)(6) motion, it generally may not consider matters outside of the pleadings without treating the motion as one for summary judgment. If the court elects to treat the motion as one for summary judgment, it must give the parties a reasonable opportunity to present all relevant evidence. Fed. R. Civ. P. 12(d). The incorporation-by-reference doctrine is an exception to that rule. *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023). Under the doctrine, "a court may properly consider a document [or, body camera footage] not referred to or

attached to a complaint . . . if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

Andrews's body camera footage satisfies the requirements to be incorporated by reference here. First, the footage "depicts the events that are central to [Williams's] claims." *Baker*, 67 F.4th at 1277. Second, Williams "does not argue that the videos were altered in any way or do not depict what actually happened; thus, [s]he has not challenged their authenticity." *Johnson*, 107 F.4th at 1301. Therefore, the Court may consider the footage.

However, in doing so, the Court "must construe all ambiguities in the video footage in favor of the plaintiff" and credit her "factual allegations where no obviously contradictory video evidence is available." *Baker*, 67 F.4th at 1278. That said, "where a video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account, and view the facts in the light depicted by the video." *Id.* at 1277–78 (citations omitted).

Viewing Andrews's body camera footage through this lens, the Court concludes that Williams's account of the incident remains plausible.[10] When Williams and Simmons first approach the fare gates, Andrews is positioned on the

---

10 The footage was manually filed with the Court. ECF 14. The events described herein occur during the first six minutes of the footage.

opposite side of the station. The gates open, and Williams begins to pass through with her luggage. Simmons pauses for approximately five seconds at the entrance to the gates before he passes through with the rest of the couple's luggage. Andrews then confronts the couple. Because of Andrews's positioning across the station when Williams and Simmons allegedly failed to pay for one fare, the viewer is unable to see their actions before the gates open. Thus, the footage does not clearly contradict Williams's allegation that she paid before proceeding through the gates.

As Williams and Simmons walk towards the escalator to descend to the train platform, Andrews approaches and asks "where your card at? [sic]" She then tells the couple not to go down the escalator and to "come back to the door," presumably a reference to the fare gates. Williams and Simmons get on the escalator anyways, with Simmons explaining that he paid with his card. Andrews states that Simmons did not tap his card and orders one of them to return to the gates to pay. Once they reach the train platform, Simmons goes back upstairs—apparently to comply with Andrews's order—and Andrews demands to see Williams's identification. Williams responds that she does not have her identification. At that point, Andrews pulls out her handcuffs and attempts to arrest Williams. Williams resists, pushing Andrews's hands away and yelling for Andrews to get off of her. The handcuffs appear to get tangled with Williams's

hair, and Williams reaches for them. Andrews pulls the handcuffs away, but when she goes to handcuff Williams again, Williams pulls the handcuffs out of Andrews's hand. Andrews recovers the handcuffs again, and Williams continues to move her arms away from Andrews to avoid being handcuffed. The struggle lasts approximately 45 seconds before Andrews tases Williams.

### B. Federal Law Claims

Williams pursues her § 1983 Fourth Amendment claims under both a false arrest theory and an excessive force theory. While both are grounded in the Fourth Amendment's prohibition on unreasonable seizures, they "must be analyzed independently," as Williams's excessive force claim "relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." *Richmond v. Badia*, 47 F.4th 1172, 1180, 1181 (11th Cir. 2022).

Before reaching the merits of her § 1983 claims, though, the Court notes that Williams's response does not address Defendants' argument that she failed to state any plausible claims against MARTA. Accordingly, those claims are deemed abandoned and dismissed without prejudice. *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)). The Court now turns to the merits of Williams's § 1983 claims against Andrews.

**1. False Arrest**

"To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Id.* at 1180. Andrews is entitled to qualified immunity if she "had arguable probable cause to arrest [Williams] for any crime, even if that crime was not 'the offense announced by [Andrews] at the time of the arrest.'" *Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195–96 (11th Cir. 2002)). Arguable probable cause "exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiff." *Richmond*, 47 F.4th at 1181 (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).

Here, Andrews argues that she had arguable probable cause to arrest Williams for obstruction in violation of O.C.G.A. § 16-10-24(a), where Williams "knowingly and willfully obstruct[ed] [her] instructions to return to the fare gate of the train station to pay for a fare" and repeatedly failed to place her hands behind her back as instructed. In support of this obstruction theory, Andrews argues that she had arguable probable cause to suspect that Williams and

Simmons committed theft of services in violation of O.C.G.A. § 16-8-5 for failing to pay one fare.[11]

O.C.G.A. § 16-10-24(a) states that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." As relevant here, "[a] police officer is *not* discharging his lawful duty when he arrests an individual without reasonable or probable cause." *Woodward v. Georgia*, 219 Ga. App. 329, 330 (1995) (quoting *Brown v. Georgia*, 163 Ga. App. 209, 212 (1982)) (emphasis in original).

Construing the complaint's factual allegations and the body camera footage in the light most favorable to Williams, the Court concludes that no reasonable officer could have believed that probable cause existed to arrest Williams. The sequence of events is important. Williams was the first to approach the fare gate, and she passes through after it opens. The gate does not appear to close before Simmons passes through, though Simmons states that he paid the fare, and the body camera footage shows him pausing for approximately five seconds at the entrance to the gate before entering. At best, a reasonable officer might suspect

---

11 The Court notes that Georgia law contains a specific criminal prohibition on "[g]ain[ing] entry into . . . any bus, rapid rail car, or station without the payment of the proper fare." O.C.G.A. § 16-12-120.1(4).

that ***Simmons*** evaded payment of the fare, but there was never a reason to suspect that ***Williams*** failed to pay. Nevertheless, Andrews apparently concludes that one of them failed to pay and demands that one of them return to the station entrance to pay. Yet the complaint and the footage support the reasonable inference that Simmons ***did*** comply with Andrews's order and made a payment—either acknowledging his initial infraction or simply to placate Andrews. But Andrews decides to arrest Williams while Simmons is paying. There was never a reason to suspect Williams of fare evasion or to order that Williams return to the station entrance and pay. Particularly considering that Simmons was in the process of complying with Andrews's order, there was no probable cause, arguable or otherwise, to arrest Williams. Therefore, at this juncture, Andrews is not entitled to qualified immunity as to Williams's false arrest claim.

**2. Excessive Force**

However, the conclusion is different as to Williams's excessive force claim, because even if Andrews's use of force were excessive, she is entitled to qualified immunity, as her use of force did not violate clearly established law. In evaluating a Fourth Amendment excessive force claim, the Court "looks to the 'totality of circumstances' to determine whether the manner of arrest was reasonable." *Draper v. Reynolds*, 369 F.3d 1270, 1277 (11th Cir. 2004) (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The Eleventh Circuit has identified at least six factors to consider in

assessing an officer's use of force: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; (3) whether he was actively resisting arrest or attempting to evade arrest by flight; (4) the need for the application of force; (5) the relationship between the need and amount of force used; and (6) the extent of the injury inflicted. *Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1239 (11th Cir. 2024). This kind of excessive force claim exists "irrespective of an officer's probable cause to make an arrest." *Richmond*, 47 F.4th at 1180.[12]

The factors point in both directions. Andrews suspected Williams and Simmons of fare evasion, which is a misdemeanor under Georgia law. O.C.G.A. § 16-12-120.1.[13] There is little indication that Williams and Simmons posed an immediate threat to Andrews—nor has Andrews argued that. Rather, Andrews points out that Williams was resisting arrest by moving her arms and at one point pulling the handcuffs away from Andrews. After Andrews tased Williams once, Williams acquiesced to the arrest, and no further tasing occurred. While Williams

---

12 A claim that "an officer's use of force is excessive . . . because an arrest was not supported by probable cause" is "subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Richmond*, 47 F.4th at 1180 (internal quotation marks and citation omitted).

13 Theft of services in violation of O.C.G.A. § 16-8-5 would also be a misdemeanor, considering the value of the allegedly stolen services was about $2.50. O.C.G.A. § 16-8-12.

sustained some injuries from the incident, she does not allege that they were notably severe.

Given this, the reasonableness of the tasing is a relatively close call. However, even assuming *arguendo* that Andrews used excessive force, she would be entitled to qualified immunity. To overcome qualified immunity, Williams must show that Andrews violated "clearly established law," which depends on "whether the contours of the right were sufficiently clear that every reasonable officer would have understood that what he was doing violates that right." *Acosta*, 97 F.4th at 1241 (citations omitted). A plaintiff can demonstrate that a right was clearly established by showing "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* (citation omitted).

Williams has not made the necessary showing here. In *Manners v. Cannella*, 891 F.3d 959, 974 (11th Cir. 2018), the Eleventh Circuit held that "it was not clearly established, at the time of the incident, that the amount of force employed violated the Constitution," where video footage established that the plaintiff "thwarted [the officer's] efforts to handcuff him for quite some time," that a "taser was used to restrain, subdue, and handcuff [the plaintiff], whose resistance was evident

from the outset," and that "use of the taser, and indeed any force employed by the police, ended once [the plaintiff] was subdued." *Id.* at 974, 975. Contrast this with other cases where the Eleventh Circuit found clearly established rights: *Acosta*, where the court held that "an arresting officer may not use gratuitous force on a non-resisting suspect who no longer poses a threat to his safety," 97 F.4th at 1242 (citing, *inter alia*, *Lee*, 284 F.3d at 1200); and *Edwards v. Grubbs*, 179 F.4th 909, 927 (11th Cir. 2026) (citing *Bradley v. Benton*, 10 F.4th 1232, 1243–44 (11th Cir. 2021)), which held that "an officer could not fire a taser at an unarmed panhandling suspect fleeing on foot who had not threatened anyone, was not a danger, and was in a vulnerable position . . . that created a danger of death or serious bodily harm."

Williams's complaint lacks the key factors of *Acosta*, *Lee*, *Edwards*, and *Bradley*. The body camera footage shows that Williams was resisting arrest (and at one point wrested the handcuffs away from Andrews) when Andrews used the taser, and Andrews did not use the taser again after Williams acquiesced to the arrest. Nor was Williams in a vulnerable position that created a danger of death or serious bodily harm. Thus, Williams has not shown a clearly established right that was violated by Andrews's use of the taser, and so Andrews is entitled to qualified immunity as to Williams's excessive force claim. Because the Court has already considered Andrews's body camera footage, which fully and clearly depicts the use of force at issue here, the Court further concludes that "the complaint could

not be more carefully drafted to state a valid claim," and so the excessive force claim is dismissed with prejudice. *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 862 (11th Cir. 2023).

### C. State Law Claims

As stated previously, Williams's response does not address Defendants' arguments for dismissal of her state law claims—indeed, her response does not address her state law claims at all. Therefore, those claims are deemed abandoned and dismissed without prejudice. *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)).

## IV. CONCLUSION

Defendants' motion to dismiss [ECF 11] is **GRANTED IN PART and DENIED IN PART**. Williams's § 1983 excessive force claim against Andrews (Count 1) is **DISMISSED WITH PREJUDICE**. Williams's § 1983 false arrest claim against Andrews (also Count 1) may proceed. Williams's remaining claims are **DISMISSED WITHOUT PREJUDICE**, and MARTA is **DISMISSED** as a Defendant in this case.

Andrews shall file her answer to the remaining portions of the complaint within 14 days of this Order. The parties are **DIRECTED** to file their Joint

Preliminary Report and Discovery Plan required by LR 16.2, NDGa, within 30 days of Andrews's answer. Defendants' motion to stay [ECF 13] is **DENIED as moot**.

The Clerk is **DIRECTED** to submit this Order to undersigned after 30 days.

**SO ORDERED** this 30th day of September, 2026.

Steven D. Grimberg
United States District Judge